# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13-CR-163-CVE |
| FREDDIE ALLEN HAYES, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court is defendant's Motion to Suppress Statements (Dkt. # 19). Defendant argues that he was subjected to custodial interrogation while he was in the hospital, and he claims that he did not voluntarily waive his Miranda rights before the interrogation began. The government notes that defendant's motion is untimely, but it does not ask the Court to deny the motion for that reason. Dkt. # 21, at 3. The government argues that defendant was alert and coherent when responding to questions, and defendant voluntarily waived his right to silence before police initiated any interrogation. An evidentiary hearing was held on April 14, 2015, and defendant was present and represented by counsel.

## I.

On June 18, 2013, law enforcement officers were attempting to arrest defendant on an outstanding felony warrant, and they observed defendant get into a white Lexus. The Lexus was registered to Sherrell Hester. Police attempted to stop the white Lexus, but defendant refused to stop the white Lexus and he led police on a high speed chase. He subsequently crashed the white Lexus into a tree after attempting to ram a police vehicle. Defendant was taken to St. John Medical Center for treatment. While defendant was receiving treatment for his injuries, Special Agents Stephen

Brenneman and Carlos Sandoval of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) initially interviewed Hester in the hospital lobby, and Hester denied that there was any contraband or firearms in the white Lexus. She also claimed that she was not aware that defendant had engaged in any illegal activity or that he possessed any firearms. Brenneman and Sandoval told Hester that they would interview her mother, Dana Wooten. When Brenneman and Sandoval arrived at Wooten's home, Hester was already there and she admitted that she had brought two firearms to Wooten's house. She stated that the firearms had been given to her by defendant. ATF agents retrieved a .380 caliber pistol and a shotgun from Wooten's house.

On June 19, 2013, Brenneman, Sandoval, and Tulsa Police Department (TPD) Officer Jessie McNeal went to the hospital to interview defendant.[1] The law enforcement officials waited for a hospital worker to leave defendant's room and they introduced themselves to defendant. Defendant stated that he was in pain, and Brenneman advised defendant that they wanted to ask him about the automobile accident and the firearms found in Wooten's home. There is no dispute that defendant received a Miranda warning and that defendant waived his Miranda rights. Brenneman testified that he did not bring any written Miranda waiver forms, but defendant orally waived his Miranda rights. Defendant stated that he was from Louisiana and he had felony convictions in Louisiana. He admitted that he was driving the white Lexus and that he fled from police on June 18, 2013. He also admitted that he took the pistol and the shotgun to Hester's house and that he received the guns from a white male identified as JB or JP. JB or JP is the son of defendant's friend BJ. Defendant did not know if the shotgun worked, and he stated that he was afraid to fire the gun due to its poor condition.

---

[1] Brenneman and Sandoval testified at the evidentiary hearing, but McNeal was not called as a witness.

BJ is a white female who lives near 6th Street and Lewis and defendant stated that BJ has more guns. Defendant admitted that he used methamphetamine, and he stated that Hester and Wooten had no involvement in any illegal activity. About two weeks after he was discharged from the hospital, defendant spoke to Brenneman and Sandoval about the firearms found at Wooten's house, and Sandoval testified that defendant recalled his initial conversation in his hospital room. Sandoval also testified that he interviewed defendant on May 28, 2014 to gather information about a different matter.

Defendant is charged with being a convicted felon in possession of a firearm, and the indictment lists at least three prior felony convictions that could qualify as violent felonies or serious drug offenses. If defendant is sentenced under the Armed Career Criminal Act, 18 U.S.C. § 924(e), he will receive a statutory mandatory minimum sentence of 15 years and he would face a maximum sentence of life imprisonment.

## II.

Defendant argues that the government bears the burden to show that his Miranda waiver was voluntary, and he asks the Court to consider that he was "heavily medicated" and that he claims to have no recollection of the interview. Dkt. # 19, at 3. The government responds that Brenneman and Sandoval each recall that defendant was "alert and coherent" during the interview and that the specificity of defendant's statements tends to show that his cognitive abilities were not impaired after the automobile accident. Dkt. # 21, at 5. The government has also provided medical records from defendant's hospital stay and it claims that the records do not show that defendant was heavily sedated. Dkt. # 21-1.

3

In Miranda v. United States, 384 U.S. 436 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. Under this rule, a court must suppress a statement, even if voluntary, if a proper warning was not given before police initiated custodial interrogation of a suspect. United States v. Patane, 542 U.S. 630 (2004); United States v. McCurdy, 40 F.3d 1111, 1117 (10th Cir. 1994). Once a Miranda warning has been given, police must refrain from interrogating a suspect if he unambiguously invokes his right to silence. Michigan v. Mosley, 423 U.S. 96, 101 (1975). However, a suspect impliedly waives his right to remain silent if he receives a Miranda warning, understands the Miranda warning, and makes an uncoerced statement to police. Berghuis v. Thomkins, 560 U.S. 370, 384-85 (2010). The fruit of the poisonous tree rule does not apply even if defendant successfully proves that police obtained a statement through custodial interrogation without giving a Miranda warning. United States v. Pettigrew, 468 F.3d 626, 636 (10th Cir. 2006). The Miranda exclusionary rule requires only that the court exclude any "unwarned statement" itself. Oregon v. Elstad, 470 U.S. 298, 307 (1985). Even if police obtain a statement from a suspect in violation of Miranda, this does not taint a subsequent warned confession or statement if the statement was voluntarily made. Elstad, 470 U.S. at 309; Pettigrew, 468 F.3d at 635.

A statement or confession should not be suppressed simply because the person making the statement was intoxicated or under the influence of medication, and this is simply a factor in the Court's analysis of the voluntariness of a statement. United States v. McCullah, 76 F.3d 1087, 1101 n.3 (10th Cir. 1996); United States v. Muniz, 1 F.3d 1018, 1022 (10th Cir. 1993). The mere fact

4

that defendant was under the effect of an intoxicating substance will not be sufficient to overcome evidence "showing that the defendant 'was sufficiently in touch with reality so that he knew his rights and the consequences of abandoning them.'" United States v. Augustine, 742 F.3d 1258 (10th Cir. 2014) (quoting United States v. Burson, 1256-57 (10th Cir. 2008)). The government bears the burden to prove by a preponderance of the evidence that a confession or statement was voluntary. Pettigrew, 468 F.3d at 633. The Court must consider the totality of the circumstances to determine whether defendant's Miranda waiver was voluntary. United States v. Jones, 701 F.3d 1300, 1318 (10th Cir. 2012). The Tenth Circuit has identified five factors that should be considered to determine whether a Miranda waiver was voluntary:

> (1) the age, intelligence, and education of the defendant; (2) the length of [any] detention; (3) the length and nature of the questioning; (4) whether the defendant was advised of [his or] her constitutional rights; and (5) whether the defendant was subjected to physical punishment.

United States v. Carrizales-Toledo, 454 F.3d 1142, 1153 (10th Cir. 2006) (quoting United States v. Glover, 104 F.3d 1570, 1579 (10th Cir. 1997)). These factors are not exclusive and a court should consider any other evidence showing that "the government obtained the statements by physical or psychological coercion such that the defendant's will was overborne." Id. (quoting United States v. Rith, 164 F.3d 1323, 1333 (10th Cir. 1999)).

Hospital records show that defendant was 32 years old when he was admitted to the hospital on June 18, 2013. Dkt. # 21-1, at 4. Defendant was admitted to the hospital on June 18, 2013 and he was discharged on June 21, 2013. Id. at 1. Hospital records from June 19, 2013 show that defendant was "alert and oriented x3." Id. at 5. On June 18, 19, and 20, 2013, defendant took acetaminophen with hydrocodone, known as Norco, for pain, but he was listed as "Level of Sedation: 1 = awake and alert" after taking the medication. Id. at 19-21. The parties have stipulated

5

that Norco contains 5 mg of hydrocodone and 325 mg of acetominophen. On June 21, 2013, defendant was discharged to the custody of the TPD in "satisfactory condition." Id. at 2. The parties have not provided any evidence as to the length of any interrogation. Brenneman and Sandoval found defendant to be alert and coherent and, based on their experience interviewing persons under the influence of drugs, they believed that defendant understood the questions asked of him and that he responded appropriately. Defendant made very specific statements about his criminal conduct. Statements about Hester's lack of involvement in any criminal conduct also tend to show that defendant understood the consequences of speaking to police and that he was voluntarily accepting responsibility for his actions to shift attention away from Hester. Sandoval also testified that defendant became nervous when he talked about the firearms, because defendant seemed to appreciate the consequences of admitting that he possessed the firearms. Brenneman and Sandoval were in plain clothes during the interview and they were carrying firearms, but the firearms were concealed during their encounter with defendant. Both Brenneman and Sandoval testified that the conversation took place in a normal tone of voice. There is no evidence of police coercion or misconduct, and the evidence shows by a preponderance of the evidence that defendant voluntarily waived his Miranda rights.

**IT IS THEREFORE ORDERED** that defendant's Motion to Suppress Statements (Dkt. # 19) is **denied**.

**DATED** this 14th day of April, 2015.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE